UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
TRUSTEES OF BOSTON UNIVERSITY, )
)
      Plaintiff, )
)
      v. )      Civil Action No. 13-11963-PBS
)
VYRIAN, INC., )
)
      Defendant. )
_____)

REPORT AND RECOMMENDATION ON ASSENTED-TO MOTION
FOR ENTRY OF PERMANENT INJUNCTION AND FINAL JUDGMENT
[Docket Nos. 10, 12]

October 29, 2013

Boal, M.J.

      Plaintiff Trustees of Boston University ("BU"), with the assent of defendant Vyrian, Inc. ("Vyrian"), moved for an order entering a permanent injunction and final judgment in this case. Docket No. 10. Samsung Electronics Co. Ltd. ("Samsung") has moved to intervene, or in the alternative, to participate as <u>amicus</u> <u>curiae,</u> for the limited purpose of opposing BU's motion. Docket No. 12.[1] For the following reasons, this Court recommends that the District Court grant Samsung's motion to intervene, and deny BU's motion for entry of permanent injunction and final judgment without prejudice to BU filing a proposed judgment consistent with this opinion.

---

[1] On September 9, 2013, the District Court referred this case to the undersigned for full pretrial case management, including dispositive motions. Docket No. 15.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This is one of many related patent infringement actions involving light emitting diodes ("LEDs") and the technology behind them. BU is an educational institution that owns by assignment a patent claiming LEDs and related technology. BU has sued Vyrian and other defendants alleging infringement of U.S. Patent No. 5,686,738 (the "'738 patent").

BU filed a complaint for patent infringement against Samsung on March 21, 2013. See Trustees of Boston University v. Samsung Electronics Co., Ltd., No. 13-cv-10659-PBS (the "Samsung Case"). On May 3, 2013, BU filed a separate suit against a number of alleged distributors of electronic components, including Vyrian, alleging infringement of the '738 patent based on their use, sale, offer for sale, or importation of Samsung LED products. See Trustees of Boston University v. Arrow Electronics, Inc., et al., No. 13-cv-11105-PBS (the "Distributors Case"). In both cases, BU alleges that certain of Samsung's LED products (the "Samsung Accused Products") infringe the '738 Patent. See Samsung Case, Docket No. 1 at ¶ 13; Distributors Case, Docket No. 1 at ¶ 16.

Vyrian maintains that it never sold the Samsung Accused Products, and it "ha[d] never even seen them." Sivasothy Aff. at ¶¶ 5, 7-8.[2] Rather, Vyrian operates a website that lists information about certain of the Samsung Accused Products because they were included in a third-party commercial database of electronic components. Id. at ¶ 5. Vyrian's website allows users "to submit an inquiry" about purchasing parts, but "[n]o price was provided" for the parts. Id. at ¶ 6.

---

[2] "Sivasothy Aff." refers to the June 12, 2013 Declaration of Sath Sivasothy. Docket No. 13-2.

Upon receiving BU's complaint, Vyrian's counsel contacted BU's counsel to seek immediate dismissal from the case. Id. at ¶ 9. Vyrian's counsel informed BU's counsel that Vyrian operates a website and does not hold products, has not sold the Samsung Accused Products, and has no intent to sell them. Id. BU initially proposed that Vyrian take a license to the '738 Patent. Id. at ¶ 10. Vyrian declined a license because it had no intent to sell the Samsung Accused Products. Id. BU then proposed to dismiss its claims against Vyrian in return for a stipulation, which BU's counsel drafted, stating that Vyrian had never sold the accused products and would be enjoined from doing so in the future. Id. BU then filed the stipulation along with a proposed judgment that asked that the Court to "confirm[] BU's and . . . Vyrian's stipulations as to" certain issues. Distributors Case at Docket No. 26.

Other defendants in the Distributors Case objected to entry of the proposed permanent injunction and final judgment. Distributors Case at Docket No. 36. Although those defendants did not object to dismissal of Vyrian, they objected to certain statements in the proposed judgment regarding purported infringement, validity, and enforceability of the '738 Patent that BU asked the Court to confirm. Id. at ¶ 7. The distributors presented a declaration from Vyrian stating, among other things, that Vyrian lacked any factual information to make stipulations about the '738 Patent's infringement and validity. Distributors Case at Docket No. 36-2.

BU's counsel then threatened a breach of contract action against Vyrian for "millions of dollars in attorney's fees and costs." See Docket No. 13-3. Vyrian's counsel reconfirmed that Vyrian had "truthfully stated that [it] did not investigate the validity of the patent," and that, "frankly, Vyrian did not know anything about the alleged infringing products." See id. BU then filed a reply in support of its motion, along with a declaration from Vyrian's counsel, and

accused the Distributors of fraud and tortious misrepresentation.  Distributors Case at Docket No. 41.  Further briefing followed.  Distributors Case at Docket Nos. 43, 44.

On July 3, 2013, BU filed an amended complaint in the Distributors Case that voluntarily dismissed Vyrian from the case.  Distributors Case at Docket No. 57.  On July 19, 2013, the District Court held a status conference.  Distributors Case at Docket No. 75.  The District Court (Saylor, J.)[3] found that BU's voluntary dismissal of Vyrian rendered the issue of the proposed judgment moot and denied BU's motion for entry of a permanent injunction and final judgment against Vyrian.  Id.  During the status conference, BU represented to the Court that it had filed a new action against Vyrian and that it would immediately file a motion for entry of a permanent injunction and final judgment against Vyrian in the new action.  See Docket No. 13-5 at 6.

BU filed the instant case against Vyrian on August 15, 2013.  Docket No. 1.  On August 28, 2013, BU filed its motion seeking entry of a permanent injunction and final judgment against Vyrian.  Docket No. 10.  That motion appears to be identical to the motion filed in the Distributors Case.  Id.  Samsung filed a motion to intervene, or in the alternative, to participate as amicus curiae for the limited purpose of opposing BU's motion.  Docket No. 12.  BU filed an opposition to Samsung's motion on September 12, 2013.  Docket No. 16.  Samsung filed a reply on September 19, 2013.  Docket No. 20.

On October 21, 2013, Vyrian filed an answer in which it admits the following: (1) Vyrian engaged in offers for sale of products in and/or into the Commonwealth of Massachusetts and those activities violated BU's patent rights under the '738 Patent (Docket No. 36 at ¶ 5); (2)

---

[3] The Distributors Case was originally assigned to Judge Saylor.  On July 23, 2013, Judge Saylor entered an order of recusal.  Docket No. 78.  The Distributors Case was reassigned to Chief Judge Saris on July 24, 2013.  Docket No. 79.

Vyrian offered for sale certain of the Samsung Accused Products (id. at ¶ 9); (3) the applicable requirements of 35 U.S.C. § 287 have been satisfied[4] (id. at ¶ 10); (4) Vyrian infringed the '738 Patent by offering for sale products that infringed the '738 Patent (id. at ¶ 11); (5) irreparable harm to BU has occurred, and Vyrian has agreed to cease and desist from offering for sale the infringing products (id. at ¶ 12); and (6) Vyrian requests a permanent injunction and that no damages be awarded because Vyrian has not made any sales of the products that infringe upon the '738 Patent (id. at ¶¶ 12-13). Vyrian requested that judgment be entered as requested by BU's motion, with damages in the amount of zero dollars. Docket No. 36 at 2.

The Court heard oral argument on October 22, 2013.

II.   ANALYSIS

BU seeks to obtain a permanent injunction and final judgment against Vyrian. The proposed order permanently enjoins Vyrian from "offering for sale, selling [sic] making, using, and importing, in or into the United States, any products covered by the ['738 Patent] including, but not limited, to [the Samsung Accused Products]." Docket No. 10-2 at 4. BU's proposed judgment asks the Court to confirm certain stipulations between it and Vyrian, including that "[t]he '738 Patent is valid, enforceable, and infringed by at least [the Samsung Accused Products];" that "Vyrian's acts of offering for sale products covered by the '738 patent including, but not limited to, the Samsung Accused Products constitute infringement of the '738 Patent." Id. at 3.

Samsung seeks to intervene in this case for the limited purpose of opposing BU's motion

---

[4] As a prerequisite to collecting damages for infringement, 35 U.S.C. § 287(a), requires a patent holder to give the infringing party legally sufficient notice of the patent. See Imagexpo, LLC v. Microsoft Corp., 299 F. Supp. 2d 550, 553 (E.D. Va. 2003).

for entry of a permanent injunction and final judgment against Vyrian. Samsung argues that the District Court has no jurisdiction because BU and Vyrian settled their dispute and, therefore, there is no case or controversy. Docket No. 13 at 14-15.[5] Samsung also argues that BU's proposed judgment is unnecessary and predicated on admittedly baseless statements. Id. at 15-17. In addition, Samsung argues that by the proposed judgment, BU seeks to gain some advantage in other cases, or to harm Samsung in the marketplace by obtaining what may be misunderstood as findings on disputed issues of infringement, validity, and enforceability. Id. at 17-19.[6] This Court finds that Samsung should be allowed to intervene and that BU's motion should be denied without prejudice to filing a proposed judgment consistent with this opinion.

A.   Motion To Intervene

Samsung seeks to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Rule 24(b) provides, in relevant part, that "[o]n timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[P]ermissive intervention ordinarily must be supported by independent jurisdictional grounds." Int'l Paper Co. v. Town of Jay, 887 F.2d 338, 346 (1st Cir. 1989) (quotations and citations omitted). When these requirements are met, "the district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion." Daggett v. Comm'n on

---

[5] Page numbers refer to the docket page numbers, as opposed to the actual page numbers of the document.

[6] In support, Samsung states that BU knew that other parties objected to the Vyrian judgment in the original case and points to the 200 subpoenas issued by BU, which this Court found included inaccurate statements and created a situation ripe for abuse.

Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).  Such factors may include:

> the nature and extent of the intervenor's interest, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether the applicant will benefit by the intervention, whether the intervenor's interests are adequately represented by the other parties, and whether the intervention will significantly contribute to the full development of the factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 (D. Mass. 1989).

Limited intervention is appropriate where a party has a specific interest in a limited aspect of a case and that interest involves a common question of law and fact.  See, e.g., Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 783 (1st Cir. 1988) (recognizing that Rule 24 "is an effective mechanism for third party . . . challenges to protective orders"); LG Elecs. Inc. v. Q–Lity Computer, Inc., 211 F.R.D. 360, 366 (N.D. Cal. 2002) (permitting non-party Apple to intervene for the limited purpose of opposing plaintiff's motion to amend its patent infringement contentions to include Apple products, as "Apple wishes to be heard on matters relating to the products it sells.").

This Court finds that consideration of Rule 24's requirements and other relevant factors favors intervention in this case.  BU's motion implicates Samsung's defenses against BU's accusation of infringement in the Samsung Case.[7]  BU's motion requests that the Court enter a stipulation and judgment "confirm[ing]" certain stipulations as to matters disputed in the

---

[7] The Court is mindful of the prejudice to Vyrian, which appears to be caught between BU and Samsung.  Indeed, BU asserts that if the Final Judgment is altered, it will not assent to dismissal.  Docket No. 16 at 2 n. 2.

Samsung Case, such as the validity and enforceability of the '738 Patent and alleged infringement of the '738 Patents by the Samsung Accused Products. Therefore, the cases involve common questions of law and fact. Even if the proposed judgment does not have any res judicata or other legal effect on the Samsung Case, Samsung represents that it is concerned that BU may attempt to use the proposed judgment to harm Samsung in the marketplace by obtaining what may be misunderstood by third parties as findings on disputed issues of validity, enforceability and infringement. Docket No. 13 at 18. That concern does not appear to be unjustified in light of BU's actions in other related cases. In another proceeding against Epistar Corporation and others, BU issued subpoenas to over 200 companies including a Notice with language asserting that use of Epistar's products "constitutes infringement" of the '738 Patent. This Court found that the Notice included in the subpoenas created a situation ripe for abuse and ordered BU to send a correction letter. See Trustees of Boston University v. Everlight Electronics Co., Ltd., No. 12-cv-11935-PBS (the "Everlight Case"), at Docket 111.[8]

In addition, Samsung's motion was timely as it was filed only one week after BU filed its motion for entry of the permanent injunction and final judgment. Also, the Court finds that Samsung's intervention will contribute to the full development of the underlying factual issues and the just and equitable adjudication of the motion.

Having found that permissive intervention is proper under Rule 24(b), the Court need not consider whether Samsung should be allowed to participate as an amicus curiae. Nevertheless, the Court makes the following observations. BU argues that Samsung is not qualified to be appointed as an amicus curiae because it is not impartial. See Docket No. 16 at 7-8. However,

---

[8] The District Court affirmed this Court's decision. See Everlight Case at Docket Nos. 151, 166.

the "acceptance of amicus briefs is within the sound discretion of the court, and [] by the nature of things an amicus is not normally impartial." Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970); see also Neonatology Assoc., P.A. v. Comm'r of Internal Revenue, 293 F.3d 128, 131 (3rd Cir. 2002) (noting that the suggestion that an amicus must be impartial is outdated and "is contrary to the fundamental assumption of our adversary system that strong (but fair) advocacy on behalf of opposing views promotes sound decision making.").

Finally, the Court notes that it has an independent obligation to determine whether it has the authority to grant the relief the parties seek, even if no one has objected. See, e.g., League of United Latin Am. Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 845 (5th Cir. 1993) ("Even if all the litigants were in accord, it does not follow that the federal court must do their bidding."). That is especially so where there may be an issue regarding whether the Court has subject matter jurisdiction, which Samsung has raised. See Docket No. 13 at 14-15. "It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citation omitted). Accordingly, the Court finds that it is appropriate to consider the propriety of the order that BU seeks, including whether the Court has subject matter jurisdiction, even if Samsung were not allowed to intervene in this case.

      B.      Subject Matter Jurisdiction

Samsung argues that the Court has no subject matter jurisdiction over this action because there is no case or controversy between BU and Vyrian as they have settled their disputes. Docket No. 13 at 14-15. This Court disagrees.

"A fundamental principle of the structure of our democracy is that federal courts are courts of limited jurisdiction." Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38

(1st Cir. 2003) (citations omitted).  "The power of lower federal courts is limited to jurisdiction authorized by the Constitution and expressly conferred by Congress." Id.  Under Article III, Section 2 of the Constitution, federal courts may only adjudicate live cases or controversies. Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Am. Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (citation omitted).  "When a case is moot . . . a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).

It is true that "[g]enerally, if the parties reach a settlement, the case is no longer justiciable as an Article III controversy." Carlough v. Amchem Prod., Inc., 834 F. Supp. 1437, 1466 (E.D. Pa. 1993).  However, a case does not become moot when the parties reach a proposed settlement agreement that is contingent on the approval of the court.  Id. (citing Havens Realty Corp., 455 U.S. 363, 371 n. 10 (1982); Coopers & Lybrand v. Livesay, 437 U.S. 463, 465 n. 3 (1978)).  Here, although the parties have settled the case, that settlement is contingent on the entry of the proposed permanent injunction and final judgment against Vyrian.  See Docket No. 16 at 6.  Accordingly, the Court finds that a controversy is present and that the Court has subject matter jurisdiction over the case.

      C.      The Court Recommends That The District Court Reject The Proposed Judgment, Unless It Is Modified In Accordance With This Opinion

"There is no question that fostering settlement is an important Article III function of the federal district courts." United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 856 (2nd Cir. 1998).  This policy favoring settlements extends to the entry of consent judgments and

injunctions in furtherance of the parties' voluntary agreements.  See Conservation Law Foundation of New England, Inc. v. Franklin, 989 F.2d 54, 59 (1st Cir. 1993) (recognizing that the courts have a "strong and 'clear policy in favor of encouraging settlements'").  Accordingly, "parties enjoy wide latitude in terms of what they may agree to by consent decree and have sanctioned by a court."  Id.

A consent decree, however, "is not merely a contract which the court perfunctorily approves upon the parties' request."  United States v. McKinley County, New Mexico, 941 F. Supp. 1062, 1065 (D.N.M. 1996).  A consent decree "is a negotiated agreement that is entered as a judgment of the court."  Rolland v. Patrick, __ F. Supp. __, 2013 WL 2322761, at *1 (D. Mass. May 23, 2013) (citation omitted).  "Consent decrees, therefore, have characteristics of both contracts and final judgments on the merits."  Id.  Thus, a consent decree is more than just a voluntary agreement; it is also a final order that "places the power and prestige of the court behind the compromise struck by the parties."  Id.  Accordingly, a court is not obliged to approve every consent decree placed before it.[9]  McKinley County, New Mexico, 941 F. Supp. at 1065-1066.

---

[9] BU argues that the Court must enter a final judgment that "strictly conform[s] to the agreed upon terms."  Docket No. 16 at 9.  However, the cases cited by BU in support of that argument are inapposite.  Those cases do not address the entry of a proposed consent judgment.  Rather, the cases cited address the issue of when a court may modify or vacate a consent decree that was previously approved and entered by the Court.  See United States v. Armour & Co., 402 U.S. 673, 673-74 (1971) (construing a consent decree to determine its prohibitions); Alexis Linchine & Cie v. Sacha A. Lichine Estate Selections, Ltd., 45 F.3d 582, 583 (1st Cir. 1995) (addressing whether modification of eight-year-old consent decree was warranted by new facts); Langton v. Hogan, 71 F.3d 930, 933-34 (1st Cir. 1995) (construing a decade-old consent decree to determine whether modification was appropriate); Wenzel v. Sand Canyon Corp., 841 F. Supp. 2d 463, 481-82 (D. Mass. 2012) (abrogated in part by Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282 (1st Cir. 2013)) (rejecting attempt to modify an already-existing, binding "Agreement for Judgment" in a housing action that had previously been "expressly approved" by the Housing Court).

Because entry of a consent decree is a judicial act, district courts must review a consent decree to ensure that it is "fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; [and] that it is consistent with the objectives of Congress . . ." Conservation Law Foundation, 989 F.2d at 58 (quoting Durrett v. Housing Authority of Providence, 896 F.2d 600, 604 (1st Cir. 1990)).

The proposed judgment is troubling in that it asks the Court to "confirm" certain stipulations between the parties regarding invalidity, enforceability, and infringement of the '738 Patent.  BU is correct that the parties are free to agree to resolve such issues as between themselves and that the stipulations would not be binding on anyone other than BU and Vyrian. "The way in which a consent judgment or decree resolves, between the parties, a dispute over a legal issue is not a ruling *on the merits* of the legal issue that either (1) becomes precedent applicable to any other proceeding under the law of *stare decisis* or (2) applies to others under the law of claim preclusion or issue preclusion." Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995) (citation omitted; emphasis in original).  The problem with the proposed judgment's wording, however, is that it does not just state that the parties agree that the '738 Patent is valid, enforceable and infringed by the Samsung Accused Products but that the Court "confirms" such findings.  While the parties are free to agree on these issues, the District Court should not make actual findings as to issues that have not been litigated and are hotly contested in other related proceedings.

BU entered into, and the District Court approved, a similar stipulation and final judgment against another defendant in the Distributors Case.  See Trustees of Boston University v. Sierra

IC, Inc., No. 13-11965-PBS at Docket No. 12.[10] In that judgment, the parties requested that the Court "confirm" the parties' stipulations. However, such stipulations were drafted so as to make clear that the parties agreed to certain findings of fact and rulings of law, without the District Court actually making any findings. For example, instead of the District Court finding that the '738 Patent is "valid, enforceable, and infringed" by the Samsung Accused Products, the parties stipulated that BU represented that the Patent was valid, enforceable, and infringed. See id. at 2. Similarly, instead of stipulating that Sierra's infringement was not willful, the parties agreed that Sierra's offering for sale of the Samsung Accused Products was not willful. Id. There appears to be no compelling reason, and BU has offered none, why BU and Vyrian could not accomplish their settlement through a stipulation and final judgment that mirrored the one with Sierra.[11]

Finally, the Court notes that Samsung's concerns regarding BU potentially using the proposed judgment to harm Samsung in the marketplace do not appear to be unjustified given BU's prior conduct in related proceedings. In another proceeding against Epistar Corporation and others, BU issued over 200 subpoenas containing a notice with language asserting that use of Epistar's products "constitute infringement" of the '738 Patent. BU has not offered any compelling reasons to support the need for an entry of the exact judgment it seeks, when it could accomplish the same goals with slightly different language.

---

[10] Like Vyrian, Sierra was originally a defendant in the Distributors Case. BU voluntarily dismissed Sierra from that action when it filed the Amended Complaint, and later refiled a separate case against Sierra, where it filed a motion for entry of a permanent injunction and final judgment against Sierra. The District Court granted the motion on September 2, 2013. See Trustees of Boston University v. Sierra IC, Inc., No. 13-11965 at Docket No. 12.

[11] Since the filing of the subject motions, Vyrian has filed an answer admitting infringement. Accordingly, the parties may also be able to accomplish their settlement through other means.

Accordingly, this Court recommends that the District Court deny BU's motion for entry of a permanent injunction and final judgment without prejudice to the parties submitting a different version of the proposed judgment consistent with this opinion.

III. RECOMMENDATION

For the reasons stated herein, this Court recommends that the District Judge assigned to this case grant Samsung's motion to intervene (Docket No. 12), and deny BU's motion for entry of a permanent injunction and final judgment (Docket No. 10) without prejudice to BU and Vyrian submitting a different version of the proposed judgment consistent with this opinion.

IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

      /s/ Jennifer C. Boal
      JENNIFER C. BOAL
      United States Magistrate Judge